RECEIVED
USDC CLERK, CHARLESTON, SC
2021 OCT 21  PM 2: 24

THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

---

Stipkala & Klosowski LLC d.b.a. Thrive IP

        Plaintiff,

v.

tHRive Law & Consulting LLC and
Katherine Corinne Bischoff,

        Defendants.

Civil Action No.: 21-CV-1829-DCN/MHC

**DEFENDANT KATHERINE BISCHOFF MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR TRO**

---

## INTRODUCTION

Litigation is designed for the public eye. Complaints, Answers, and all other filings are meant to be seen by the public – meant to be commented on and examined by the people – and this is why statements related to litigation enjoy an absolute privilege from defamation claims. When a party initiates a lawsuit, what happens in the lawsuit is a matter of public record allowing everyone – including reporters – to review the party's papers and make their own assumptions. This includes parties to a lawsuit. Absent an order from the Court, ***nothing*** prevents a party from exercising her First Amendment Right to discuss the litigation truthfully. That is what happened here and why Plaintiff has brought its Motion.

Plaintiff has received everything it wants by its Complaint – I stopped using the word "tHRive" as a part of my business, dissolved the entity entirely, and changed the domain of my website – despite Plaintiff's meritless claims. Pl. Mem. 3; *see* Answer. I wanted to save money and time for my clients and family. Answer. Now, Plaintiff seeks to prohibit me from talking about why these changes were made and remove any truthful statements I have already made. Plaintiff alleges that because I spoke the truth to a reporter who had previously reported on

1

Plaintiff's prior lawsuit and told my story on LinkedIn and Twitter, I should be punished because its behavior looks bad in the eyes of the public. Plaintiff's own actions harmed its reputation when described truthfully by me. Notably, Plaintiff makes no mention of any false statement – a prerequisite for a defamation claim – that I've made. Instead, Plaintiff relies on what third-party commentators to the LinkedIn and Twitter posts said and blame me. Those commentators have not been sued for defamation. Plaintiff sued only me.

Yet again, I'm faced with a decision. Go forward and defend myself against a spurious claim of defamation not rooted in facts or law or save this Court time and my sanity and money by capitulating to Plaintiff's demands and remove the social media posts. As of October 19, 2021, the posts on LinkedIn and Twitter have been deleted from my accounts. Accordingly, Plaintiff has again got everything it wanted.[1] Plaintiff's defamation claim and this Motion are both meritless and moot.

## ARGUMENT

To succeed in its Motion, Plaintiff *must* establish that it is likely to succeed on the merits of its claims; that it is likely to suffer irreparable harm in the absence of preliminary relief; the balance of equities tips in its favor; and that the injunction is in the public interest. *Winter v. National Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 376 (2008). As Plaintiff notes, a "preliminary injunction shall be granted only if the moving party clearly establishes entitlement to relief sought." Pl. Mem. 6 (citing *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017)). Here, Plaintiff fails to establish any of these factors.

---

[1] Notably, Plaintiff insists upon a confidentiality and nondisparagement provision of any settlement agreement. I will not sign an agreement that contain these provisions as I believe I should be free to speak truthfully about what caused the changes to my business as I have done to date.

## I. PLAINTIFF'S MOTION IS UNLIKELY TO SUCCEED ON THE MERITS.

For Plaintiff's Motion for Temporary Restraining Order to succeed, it must demonstrate that it will likely succeed on the merits of the underlying claim. *Winter*, 129 S. Ct. at 376. Because this Court has no personal jurisdiction over me, truth is a defense to a defamation claim, and absolute privilege covers all my statements, Plaintiff is unable to meet this burden.

### A. This Court Does Not Have Personal Jurisdiction.

In order for this Court to adjudicate Plaintiff's claims, it must have personal jurisdiction over me. Plaintiff argues that I have waived personal jurisdiction because I answered its Complaint. Not true. I have not given express or implied consent to this Court's jurisdiction. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) (requiring a defendant give express or implied consent to jurisdiction). While I did not bring a costly motion to dismiss prior to answering Plaintiff's Complaint,[2] I raised the affirmative defense. Rather than engage an attorney, I rendered Plaintiff's claims moot by giving Plaintiff everything it wanted – my firm name, a domain name change to my website, and dissolution of my firm. No waiver exists.

This Court does not have personal jurisdiction over me. The due process test for personal jurisdiction has two related components: the minimum contacts inquiry and the fairness inquiry. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). Here, Plaintiff has not shown the requisite minimum contacts between the great state of South Carolina and me. Again, I have not been to South Carolina in over 15 years, and I have not done business or purported to do business in South Carolina. Plaintiff argues that personal

---

[2] If I had brought a motion to dismiss based on personal jurisdiction, Plaintiff would have been free to file suit against me in the U.S. District of Minnesota. This would have just kicked the can down the road and not resolved this matter. Instead, I rendered Plaintiff's claims moot despite their lack of merit.

jurisdiction exists simply because my website, LinkedIn, and Twitter merely appear in South Carolina. But that is not the standard for websites that only provide information. *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390 (4th Cir. 2003) (stating "If… the defendant's site is passive, in that it merely makes information available, the site cannot render him subject to specific personal jurisdiction in a foreign court" citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) and *ESAB Group, Inc. v. Centricut, LLC,* 34 F.Supp.2d 323, 330 (D.S.C. 1999)). Rather, "a person's action of placing information on the Internet is not sufficient by itself to subject that person to personal jurisdiction in each State in which the information is accessed. *Carefirst of Maryland, Inc.*, 334 F.3d at 399 (citing *ALS Scan, Inc v. Digital Service Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002); *see also Young v. New Haven Advocate*, 315 F.3d 256, 262-3 (4th Cir. 2002) (finding personal jurisdiction requires proof that the out-of-state defendant's Internet activity is expressly targeted at or directed to the forum state). Telling my story – placing information on the Internet without express targeting of an audience in South Carolina – does not subject me to the personal jurisdiction of this Court.

Even if Plaintiff were to show minimum contacts, jurisdiction may still be defeated if its exercise would be unreasonable and contrary to concepts of fair play and substantial justice. *See Akro Corp. v. Luker,* 45 F.3d 1541 (Fed. Cir.), *cert. denied,* 515 U.S. 1122, 115 S. Ct. 2277, 132 L. Ed. 2d 281 (1995). The reasonableness inquiry is a multi-factor balancing test that weighs any burden on the defendant against various countervailing considerations, including plaintiff's interest in obtaining relief and the forum state's interest in the controversy. *See World-Wide Volkswagen,* 444 U.S. at 292, 100 S. Ct. 559. However, defeat of an otherwise constitutional exercise of personal jurisdiction on the grounds of unreasonableness is "limited to

the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1568 (Fed. Cir. 1994). In this situation, my lack of contacts with South Carolina and given my actions of removing the social media posts entirely, the state has zero interest in adjudicating this dispute and the burden of subjecting me to this litigation is constitutionally unreasonable.

Because no personal jurisdiction exists, Plaintiff's claims fail as does this Motion arguing the "defamation" it has suffered has caused and will continue to cause irreparable harm if this Court does not intervene.

### B. Plaintiff's Defamation Claim Fails as No False Statement Was Made and Any Statement Made Enjoys Absolute Privilege.

To establish a claim of defamation, Plaintiff must show (1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable regardless of harm or the publication of the statement caused special harm. *West v. Morehead,* 396 S.C. 1, 7, 720 S.E.2d 495, 498 (Ct. App. 2011). Here, Plaintiff is unable to show a false statement was made and that an unprivileged statement was published to a third party for which I am at fault.

    1. <u>Truth is an Absolute Defense to a Defamation Claim.</u>

Plaintiff alleges that I defamed them by metaphorically placing a billboard on I-26 that says Plaintiff is a sexist law firm. Pl. Mem. p. 16. I did no such thing. I did two things: (1) forward my Answer to a reporter who had previously covered Plaintiff's infringement action against Jamie Marcario; and (2) compose two social media posts, one on LinkedIn and one on Twitter. *See* Plaintiff's Mem. Exs. 1, 2 and 3. Because nothing included in either of these

2:21-cv-01829-DCN-MHC     Date Filed 10/21/21     Entry Number 21     Page 6 of 12

actions was a false of fact, Plaintiff's defamation claim and this Motion fail. *See Ross v. Columbia Newspapers, Inc.*, 266 S.C. 75, 221 S.E.2d 770 (1986) (holding truth is an absolute defense to defamation); *see also Swinton Creek Nursery v. Edisto Farm Credit*, 334 S.C. 469, 484, 514 S.E.2d 126, 133 (S.C. 1999)(requiring a false statement for defamation claims).

   *a. Plaintiff's firm has six male attorneys and zero women attorneys.*

A review of Plaintiff's website shows six male attorneys work there. No female attorneys work for Plaintiff. *See* https://thrive-ip.com/attorneys/ (last visited October 19, 2021).

   *b. Plaintiff Alleged Blog Posts In Which I Advocated for Diversity and Inclusion Infringed On Their Trademark.*

As evidence that I allegedly infringed on Plaintiff's mark, Plaintiff attached blog posts in which I advocated for the world's largest human resources association should say the words Black Lives Matter and support the LGBTQ community and argued for organizations to create more diverse and inclusive work environments. First Amend. Compl. Ex. 4. Plaintiff argues that these posts created confusion with their trademark. *Id.* at 29. Plaintiff's allegation is that its mark should not be associated with such blog posts. *Id.* at 29; *see also Id.* at 54 (alleging a claim based on the allegation "Defendants are in some way affiliated with or sponsored by Plaintiff" – something Plaintiff wishes to avoid). Plaintiff cannot deny this is a true fact even if Plaintiff believes in "*e pluribus unim*" [sic]. Pl. Mem. 9 (error in original).

   *c. Plaintiff Only Sued Women-Owned Firms.*

Plaintiff must admit it has only sued firms owned by women for trademark infringement. Pl. Mem. p. 4-5 (noting it had not initiated action against the male-owned Thrive Law Group located in Georgia); *see also Stipkala & Klosowski d/b/a Thrive IP v. Thrive Law PA and Jamie*

6

*Moore Marcario*, Court File No. 2:20-CV-02456 RMG.[3] Plaintiff alleges it was not possible to sue the male-owned firm as of May 2021. Pl. Mem. 9. Yet, this suit was initiated in June 2021, after the male-owned firm was established. *See* Pl. Mem. 5 (admitting this suit was initiated in June 2021). As a party, Plaintiff does not appear in any other lawsuit filed before this Court nor has it now initiated suit against Thrive Law Group out of Georgia. Bischoff Dec. Ex. A. Again, the fact is Plaintiff has only sued women-owned firms.

### d. Plaintiff Repeatedly Referred to Me as "Ms. Kate."

In an email dated October 2, 2021, Plaintiff's Managing Partner, Jeremy Stipkala, referred to me as "Ms. Kate" four times in just seven sentences. Bischoff Dec. Ex. B. As one can see from the comments to the LinkedIn post, people find this kind of language insulting and demeaning – exactly how I explained it to Mr. Stipkala in my response to him – especially in a professional setting.[4] *See* Plaintiff Mem. Exs. 1, 2 & 3.

Because nothing contained in my LinkedIn or Twitter posts and the email where the Law360 reporter, Ms. Hu, was cc'd is false, Plaintiff's claim and this Motion fail.

### 2. My Statements Enjoy Absolute Litigation Privilege.

Plaintiff has fixated on the phrase "gender-based decisions"[5] contained in my Answer and republished in my October 3, 2021 email to their Complaint as defamatory. Answer; Pl. Mem.

---

[3] It appears Ms. Marcario settled her claims before answering the Complaint and initiated a new law firm. Plaintiff appears frustrated I did not choose the same path. Plaintiff suggests I acted maliciously by stating I would speak out about their claims. Pl. Mem. 7. During settlement negotiations, I did not discuss Plaintiff's trademark infringement claims publicly knowing that . *See* Pl. Mem. 3. However, multiple times during those settlement discussions, mention of my willingness to speak openly about Plaintiff's claims was made. Plaintiff chose to disregard this fact, possibly believing that I had no real intention of speaking openly. But I did. And, I did so truthfully. It is only after yet another attempt to get me to sign away my ability to speak openly about the reasons for changing my name did this new defamation claim arise.

[4] If Plaintiff's claim was to be subject to discovery, I will seek all emails not containing attorney-client privileged information where Mr. Stipkala uses Mr. [First Name] when referring to males.

[5] If Plaintiff's claim was to be subject to discovery and further motion practice, I will seek all information related to gender within Plaintiff's possession. Notably, the *McDonnel Douglas* framework to determine if sex is a factor in decision-making would be helpful to determine the truth of the allegation of "gender-

Ex. 1. Because this statement enjoys litigation privilege under South Carolina law, the statement itself and any republication of the statement cannot form the basis of a defamation claim.

South Carolina has long held that statements made during the course of litigation enjoy absolute privilege from defamation actions. *Vausse v. Lee*, 1 Hill 197, 26 Am. Dec. 168 (1833); *Corbin v. Washington Fire Marine Ins. Co.*, 278 F. Supp. 393, (D.S.C. 1968), *aff'd* 398 F.2d 543 (4th Cir. 1968). *See generally* Restatement (Second) of Torts Sections 585, 586, 587, 588 (1977) (stating publication and republication of statements covered by absolute privilege cannot be defamatory); 23 A.L.R.4th 932, *Libel and Slander: Attorneys' Statements, to Parties Other Than Alleged Defamed Party or Its Agents, In Course of Extrajudical Investigation or Preparation Related to Pending or Anticipated Civil Litigation As Privileged* § 4(a) (reciting cases where attorney and party statements were absolutely privileged and not subject to defamation claims). In *Crowell v. Herring*, the South Carolina Court of Appeals held that absolute privilege protects statements of judges, parties, and witnesses offered in the course of judicial proceedings from defamation when the statement or utterance arises out of the judicial proceeding or has any reasonable relation to it. 301 S.C. 424, 392 S.E.2d 464 (S.C. App. 1990). There can be no question that all of my statements, including the Answer, the email cc'ing the Law360 reporter, and the LinkedIn and Twitter posts are statements directly and reasonably related to Plaintiff's claims, establishing absolute privilege over them. Further, my actions to delete the LinkedIn and Twitter posts render those claims moot. Accordingly, Plaintiff's defamation claim and this Motion fail.

### C. Alternatively, referring to Plaintiff as "Sexist", "Racist", or "anti-LGBTQ" is Not Defamatory as a Matter of Law.

---

based decision-making" contained in the Answer. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (holding circumstantial evidence tying demeaning protected-class comments with employment decisions can form the basis of discrimination claims).

8

Plaintiff alleges that I "insinuated" it is a racist, anti-LGBTQ, and sexist law firm. Pl. Mem. I made no such comment. In fact, Plaintiff contends that by pointing out their conduct, I essentially purchased a billboard on I-26 in Charleston announcing "WARNING: THIS LAW FIRM IS SEXIST." Pl. Mem. 16. I did not do this or anything even resembling it. *See* Pl. Mem. Exs 1, 2 &3. However, if I had, Plaintiff's defamation claim is still not actionable.

South Carolina law recognizes that the term "racist" is a writer's opinion and rhetorical hyperbole. *Garrard v. Charleston County School District*, 429 S.C. 170 (2019); *see also Snyder v. Phelps*, 580 F.3d 220 (4th Cir. 2009) (holding the "general tenor" of rhetorical speech together with the specific language used, "sufficiently negates any impression that the speaker is asserting actual facts," thus precluding a defamation claim); *George v. Fabri*, 345 S.C. 440 (2001) (holding statements alleging an individual was "racist" and "holds supremacist views" could not form the basis of a defamation claim); 50 Am. Jur.2d *Libel and Slander* § 200 (2017) (stating "However, general statements charging a person with being racist, unfair, or unjust, without more, … constitute mere name calling and do not contain a provably false assertion of fact as required for defamation"). The same could be said for the terms "sexist" or "anti-LGBTQ" as Plaintiff alleges. Under this precedent, Plaintiff's claim and its Motion fail.

## II. NO IRREPARABLE HARM EXISTS OR WILL CONTINUE TO EXIST.

The next factor in determining if a temporary restraining order or preliminary injunction should be whether irreparable harm exists if such an order is not put into place. *See Winter*, 129 S. Ct. at 376. For this factor, Plaintiff point to Scott Bower's emails. Pl. Mem. Exs. 7 & 8. Importantly, I did not write Scott Bower's emails. I did not even know they existed until Plaintiff sent them to me in their threatening email of October 5, 2021. Pl. Mem. Ex. 6. I do not

know Scott Bowers nor have I had interaction with him. Plaintiff has not sued him for defamation. It only blames me for his actions. I cannot be held liable for the actions of another.

Plaintiff must demonstrate more than just a "possibility" of irreparable harm. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a 'clear showing' that the plaintiff is entitled to relief." *Winter*, 129 S. Ct. 365 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L.Ed.2d 162 (1997) (per curiam)). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date ... weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937 (1974). Here, Plaintiff has not established any harm that can be remedied by a temporary restraining order or preliminary injunction.

### A. The Posts Have Been Deleted.

Any irreparable harm to Plaintiff has ceased to exist, making a temporary restraining order or preliminary injunction unnecessary. On October 19, 2021, I deleted both the LinkedIn and Twitter posts Plaintiff objects to. Accordingly, this Court need not take any action.

### B. No Law360 article has been published.

The Law360 reporter Plaintiff is so upset over has not written an article about this case, neither has Law360. As far as I'm aware no news articles have been written. Accordingly, Plaintiff has not and cannot be harmed based upon my email cc'ing her. Pl. Mem. Ex. 1.

Without a showing of continuing and imminent harm compensatory damages could not remedy, a temporary restraining order or preliminary injunction is unnecessary. Essentially, Plaintiff's need for a temporary restraining order or preliminary injunction has been rendered

moot. *See Di Biase v. SPX Corp.*, 872 F.3d 224, 232 (4th Cir. 2017) (holding when a preliminary injunction motion has been rendered moot, no injunction should be ordered). Plaintiff's Motion fails.

### III. THE BALANCE OF EQUITIES IS IN MY FAVOR AS PLAINTIFF HAS RECEIVED EVERYTHING IT WANTS.

By its Motion, Plaintiff is attempting to use this Court to prevent me from speaking about the real reason I changed by business name because the facts look bad for Plaintiff. Yet, Plaintiff initiated this action, I did not. Plaintiff only sued women-owned firms, I did not. Plaintiff repeatedly referred to me as "Ms. Kate", I certainly did not. It is Plaintiff's actions when truthfully described by harm Plaintiff's reputation. The balance of equities in silencing me from truthfully discussing this matter from any harm the facts have caused Plaintiff weigh in my favor.

### IV. AN INJUNCTION IS NOT IN THE PUBLIC'S INTEREST.

Finally, I am at a loss as to the public interests in this Court ordering me to remain silent about pending litigation. The First Amendment prohibits courts from silencing individuals particularly when their speech is related to a public interest, such as litigation.

### V. PLAINTIFF'S CLAIMS MUST BE DISMISSED WITH PREJUDICE.

On October 8, 2021, I provided Plaintiff with a Rule 11 Notice letter outlining the arguments above as well as the fact that it has already received everything it sought in its original Complaint. Plaintiff's emotional and overzealous Motion and claim of defamation have no basis in law or fact. The sanction for its conduct should be dismissal of its First Amended Complaint with prejudice.

## CONCLUSION

Plaintiff is upset I did exactly what I said I would do and more importantly, what the First Amendment allows me to do. I spoke truthfully about the reasons I had to change my firm, pointing out the facts of Plaintiff's actions. Plaintiff has received everything it wanted – it got my firm name, forced me to a new domain, I dissolved my business, was forced to start a new one for the sake of my sanity, clients, and family, and took down the social media posts that Plaintiff is so concerned about even though I only stated facts. The only things I kept for myself are my dignity and the ability to speak truthfully about Plaintiff's meritless yet costly claims. Plaintiff's claim and this Motion fail for lack of personal jurisdiction, lack of a false and unprivileged statement, the equities weigh in my favor and the public has no interest in silencing me.

Dated: October 20, 2021                    KATHERINE CORINNE BISCHOFF, PRO SE

*[signature]*

Katherine Corinne Bischoff
5725 Wentworth Avenue
Minneapolis, MN 55419
(612) 361-7707
kate@k8bisch.com