THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Stipkala & Klosowski LLC d.b.a. Thrive IP®
                    Plaintiff,          Civil Action No.: 2:21-cv-01829-DCN-MHC

v.

Thrive Law & Consulting LLC,
                    and
Katherine Corinne Bischoff,
                    Defendants.

**PLAINTIFF STIPKALA & KLOSOWSKI LLC'S REPLY IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendant Bischoff states that she has ceased all use of the "Thrive" brand. She has changed her domain name and appears to have taken down her defamatory posts. That being the case, Stipkala & Klosowski LLC d.b.a. Thrive IP® ("S&K") is willing to dismiss the pending litigation without prejudice, with all parties to cover their own costs and fees, allowing the Court to move on to other important business.

S&K maintains that facts are facts and their dissemination should not be restricted without a substantial showing of public harm. However, it is oftentimes the way the facts are presented and the innuendo therein that causes harm. Defendant Bischoff fails to tell the Court that her on-line posts concerning S&K and the present litigation have been disseminated on social media to well over 35,000 people, and likely tens of thousands more. Defendant Bischoff has asserted that S&K only sues infringers of its mark if the law firm is owned by a woman. The express message that S&K makes legal decisions based on gender rather than on careful analysis of the law, facts, and evidence was clearly received by the thousands of readers on social media. It is that and related defamatory and needless postings that prompt the present Motion.

1

If a dismissal without prejudice is not possible, S&K seeks the relief set forth in its Memorandum (ECF No. 17-1 at 17-19).  Defendant Bischoff's philosophy seems to be, "it is okay to hurt people, so long as [she] do[es] not break the law."  Accordingly, she has implemented a plan of retaliation, mob incitement, defamation, and harassment against S&K.  She does not apprehend, however, that she has broken the law in her campaign to hurt S&K in retaliation for asserting its duly-registered trademark, THRIVE IP®.

This very district recently heard another case involving a plan of retaliation, mob incitement, defamation, and harassment.  In that case, a European defendant was haled into court here in South Carolina to redress an eerily-similar plan.  *See* <u>Bakala v. Krupa</u>, No. 9:18-CV-2590-DCN-MGB, 2020 WL 2308730 (D.S.C. Mar. 30, 2020), *report and recommendation adopted,* No. 9:18-CV-2590 DCN MGB, 2020 WL 2307888 (D.S.C. May 8, 2020).  There, as here, this Court has the tools to redress the harm directed to South Carolina.

S&K maintains its request for a preliminary injunction.  S&K remains at the mercy of its abuser.  That mercy is rather fickle.  Defendant Bischoff found it "incredibly offensive" (ECF No. 17-4 at 3) being referred to as "Ms. Kate" in relatively private correspondence between her attorney and the undersigned.[1]  Yet Defendant Bischoff found it quite acceptable to maintain a threat of violence and the most-vile accusations in her very public Twitter feed, even after being requested to take them down.  A responsive tweet advocated "MURDER" on October 3, 2021.  *See* responsive tweets attached as Exhibit 1 at 5.  Vile accusations of pedophilia ("underage") and bestiality ("possums") appeared on October 4, 2021.  *See id.* at 8.  S&K requested take down on October 5, 2021, and Defendant Bischoff refused the same day.  *See* ECF No. 17-7 at 3-4 (take-down request) and 2 (refusal).  On or about October 19, 2021, Defendant Bischoff finally took down her defamatory posts, the threat of violence, and the vile accusations, and then only to

---

[1] Defendant Bischoff has improperly submitted a communication under Fed. R. Evid. 408 to this Court.  *See* ECF No. 22 at 4.

seek advantage with this Court, as her Opposition was due two days later. In that Opposition, she strenuously argues she has done nothing wrong. *See* ECF No. 21. She threatens scorched-earth discovery to dredge up evidence that S&K is, in fact, sexist. *See id.* at 7, n. 4 & 5. A preliminary injunction remains necessary in this case, as Defendant Bischoff remains poised to share her skewed version of this rather straight-forward case with the world, intent on harming S&K. What fresh outrage and damage to its reputation must S&K endure should the Preliminary Injunction be denied?

## ARGUMENT

A. This Court Has Specific Personal Jurisdiction over Defendant Bischoff Due to Defamation.

Defendant Bischoff's personal jurisdiction argument ignores vast amounts of evidence inconvenient for her case.

The body of law governing specific personal jurisdiction appears cogently recited in the case law and need not be repeated at length here. *See, e.g.,* Carepoint, Inc. v. Carepoint Healthcare, LLC, No. 2:20-CV-1109-DCN, 2020 WL 4207579, at *1-*3 (D.S.C. July 22, 2020). Succinctly restating a portion of that law,

> The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable."

*Id.* at *3. (*quoting* Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001)).

(1) Here, Defendant Bischoff defamed S&K to a journalist (ECF No. 17-2 at 2), to at least 21,000 people on Twitter (ECF No. 17-7 at 3), and to at least 14,000 people on LinkedIn (ECF No. 17-7 at 2). Those defamatory acts whipped up a mob into a frenzy of hatred, derision, harassment, and further defamation directed squarely at S&K and its attorneys. Every spiteful

3

contact by that mob with S&K, a South Carolina entity, is a purposeful contact with South Carolina that can be laid at Defendant Bischoff's feet.

By October 2, 2021, S&K was ready to make this litigation go away. But Defendant Bischoff wanted to harm S&K first with her posts – posts that were not limited geographically. She took steps to defame S&K as far and wide as she could. She admits "I did two things: (1) forward my Answer to a reporter who had previously covered Plaintiff's infringement action against Jaime Marcario; and (2) compose two social media posts, one on LinkedIn and one on Twitter." ECF No. 21 at 5. In the email forwarding the Answer to the reporter and in the tweet, Defendant Bischoff defamed S&K, asserting that S&K allegedly made "gender-based decisions" to sue only "women-owned firms" infringing its registered mark. *See* ECF No. 17-2 at 2; ECF No. 17-3 at 7. Defendant Bischoff also committed defamation *per quod* in the LinkedIn article stating, "Notably, the SC gentlemen only sued the women-owned firms – not the man's." ECF No. 17-4 at 3. The email was received by two South Carolina residents, Mr. Klosowski, and Dr. Stipkala. *See* ECF No. 17-2 at 2; *see also* accompanying Declarations identifying residency. The tweet was received by at least one South Carolina resident. *See* Exh. 1 at 10 ("I'm a transplant here to SC[.]"). Defendant Bischoff hypertext linked the LinkedIn article to S&K's LinkedIn page. *See* ECF No. 17-1 at 10; ECF No. 17-4 at 2. Then Defendant Bischoff *gloated* that her posts had been seen by over 35,000 people. *See* ECF No. 17-7 at 2-3. A portion of those 35,000 people reside in South Carolina.

In a similar case, a mob aroused to harass and defame a South Carolina resident was found to create purposeful contacts with South Carolina, and confer specific personal jurisdiction in our state on the architect of that mob. *See* <u>Bakala</u>, 2020 WL 2308730 at *6. That was true even though that architect resided in Europe and alleged no other contacts with South Carolina. *See id.* at *4. In <u>Bakala</u>, the mob "spoke directly with at least one other person," "uttered allegedly defamatory statements," "encouraged them to view a defamatory website," and "posted

4

a YouTube video that suggestively threatened [local residents]." *Id.* at *5. Here, Defendant Bischoff incited her on-line mob to retweet her defamatory tweet 15 times (Exh. 1 at 1), quote tweet 11 times (*id.*), send harassing emails to S&K's managing attorney (ECF Nos. 17-8 and 17-9), and hurl violent, vile, derisive, and defamatory statements directly at S&K and its attorneys in tweets and comments responsive to her defamatory posts (Exh. 1; ECF No. 17-4 at 4-7). Defendant Bischoff cannot walk away from the actions of her mob, as the members of that mob are doing exactly what she expected and hoped they would do. Now, those purposeful contacts that she gleefully instigated bring her under the bright light of jurisdiction in South Carolina to answer for the harm she caused – and remains ready to cause in the future. The actions of her mob augment Defendant Bischoff's purposeful contacts that also confer specific personal jurisdiction in South Carolina. *See* ECF No. 17-1 at 13-17.

"In conducting a specific jurisdiction inquiry, a district court must 'direct [its] focus to the quality and nature of [the defendant's] contacts.'" Carepoint, Inc., 2020 WL 4207579 at *2–*3 (*quoting* Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 397 (4th Cir. 2003)(alterations in original)). Every "like," "applause," and "love" reaction on social media does not necessarily represent a high-quality contact by Defendant Bischoff's mob with the forum state. But the retweeting, sharing, and other republication magnifies and perpetuates the harm. And the hypertext linking, in particular, of S&K's LinkedIn page and the LinkedIn pages of its attorneys represents purposeful contacts of a quality relevant to the personal jurisdictional analysis, at least because they indelibly link the defamation to S&K's own advertisement. *See* ECF No. 17-1 at 16 (LinkedIn search results associating the defamatory LinkedIn article to S&K's LinkedIn page); ECF No. 16-13 (same); *see also* EFC No. 17-4 at 4-7 (showing hypertext linking to S&K's LinkedIn page and to Dr. Stipkala's LinkedIn page). It is not relevant that S&K has not "claimed" its LinkedIn page. S&K's LinkedIn page exists as it is, and prospective clients find and reach S&K through LinkedIn by messaging its attorneys

5

directly. Defendant Bischoff and her mob hypertext linking S&K's page and those of its attorneys hangs a scarlet letter on S&K's advertising – purposeful contacts by Defendant Bischoff *et al*.

(2) S&K's defamation claim arises out of the forum-related activities of Defendant Bischoff and her mob, since those activities manifest and magnify the actionable injury to S&K's reputation. Defendant Bischoff's efforts to establish that S&K makes gender-based decisions when it ought to analyze the law, facts, and evidence give rise to the defamation claim itself. The mob republishing those defamatory statements and adding derision and further defamation directed at S&K add to the harm. The court in Bakala observed "the analysis for this factor 'is generally not complicated.'" Bakala, 2020 WL 2308730, at *5 (*quoting* Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 305 (4th Cir. 2012)).

(3) The exercise of jurisdiction is constitutionally reasonable. In Bakala, that court pointed out "the Fourth Circuit has found it reasonable to exercise specific personal jurisdiction over defendants from United Arab Emirates, China, and India." Bakala, 2020 WL 2308730, at *5 (*citations omitted*). Those defendants could hire local counsel, lessening their burden. *See id.* The Bakala defendant initially hired attorneys then fired them, but that did not defeat jurisdiction. *See id*. It is not unreasonable to have that European resident litigate here in South Carolina under those circumstances.

Here, Defendant Bischoff admittedly "provides legal training services across the country." ECF No. 7 at 9, Para. 35. She has been quoted in major news outlets like *The New York Times* (New York), *CNN.com* (Georgia), *NPR* (Washington, D.C.), *The Wall Street Journal* (New York), *USA Today* (Virginia), *Bloomberg Law* (New York), and *Star Tribune* (Minnesota). *See* ECF No. 7 at 6-7, Para. 25. She has represented clients outside of Minnesota. *See id.* at 8, Para. 25. Initially, she retained counsel, but has fired her. She can hire local counsel if she wants. Defendant Bischoff has navigated Pacer, and has filed an Answer (ECF No. 7), an

6

Opposition (ECF No. 21), and a Declaration (ECF No. 22) she drafted herself. Accordingly, Defendant Bischoff faces much less of a burden litigating in South Carolina than those defendants in Bakala from Europe, United Arab Emirates, China, and India. Defendant Bischoff has not pointed to anything that make this case the "rare situation" where her burden outweighs substantial interests in adjudicating the dispute in South Carolina. *See* ECF No. 21 at 4-5. Accordingly, it is not constitutionally unreasonable to have her litigate here.

The present case differs from the Bakala case, where the mob appeared live and in person in Mr. Bakala's neighborhood. Bakala, 2020 WL 2308730, at *5. But the online mob in the present case counts even more in the personal jurisdiction analysis, because S&K's reputation manifests most highly amongst its potential clientele online. A mob, live and in person in the parking lot outside of S&K's office in North Charleston, SC, could not do nearly the same damage shouting defamatory statements to random and uncomprehending patients of the doctors and dentists who share an office park with S&K. Instead, the online mob brings negative attention to S&K right where it counts, just as Defendant Bischoff wants.

The present case also differs from the Bakala case because it was alleged that the defendant there had paid the mob to harass and defame Mr. Bakala. Bakala, 2020 WL 2308730, at *4. Here, the mob is motivated solely by the raw emotion aroused by Defendant Bischoff's falsehoods. Defendant Bischoff's defamation is the proximate cause of her mob's damaging contacts with South Carolina. But for her defamatory statements, no such mob would have formed, and the mob's formation and reaction were perfectly foreseeable to Defendant Bischoff. "Proximate cause requires proof of: (1) causation-in-fact, and (2) legal cause." Wickersham v. Ford Motor Co., 997 F.3d 526, 533 (4th Cir. 2021)(*quoting* Baggerly v. CSX Transp., Inc., 370 S.C. 362, 635 S.E.2d 97, 101 (2006)). Causation-in-fact is "but for" causation. *See id.* "Legal cause requires demonstrating the injury's foreseeability." *Id.* The foreseeable effects of the defamatory statements are felt by S&K in South Carolina. *See* Bakala, 2020 WL 2308730, at *4,

n. 3 (*citing* the "effects test" from Calder v. Jones, 465 U.S. 783 (1984)).  "We hold that jurisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California."  Calder, 465 U.S. at 791, 104 S. Ct. at 1488.

Caselaw indicates that the Defendant Bischoff is liable for her mob's republication of those falsehoods.  "'It is well settled that the author or originator of a defamation is liable for a republication or repetition thereof by third persons, provided it is the natural and probable consequence of his act, or he has presumptively or actually authorized or directed its republication.'"  Lokhova v. Halper, 995 F.3d 134, 144 (4th Cir. 2021)(*quoting* Weaver v. Beneficial Fin. Co., 199 Va. 196, 199, 98 S.E.2d 687, 690 (1957)).  *See also* Chandler v. Berlin, 998 F.3d 965, 976 (D.C. Cir. 2021)).  The evidence shows the defamatory tweet was retweeted at least 15 times, and quote tweeted at least 11 times.  *See* Exh. 1 at 1.  Those republications are the perfectly natural and probable consequences of Defendant's defamatory plan.  "Plaintiff is upset I did exactly what I said I would do[.]"[2]  ECF No. 21 at 12.  It follows that purposeful contacts with the forum state by her mob via repeated defamation should be attributable to Defendant Bischoff, as they were in Bakala.

Even a single contact can confer specific personal jurisdiction.  Judge Norton explained:

> The fact that a single purposefully availing contact with a forum state can support a court's exercise of personal jurisdiction makes good sense. By way of example, where a manufacturer sends a single dangerous product into a forum state and a citizen of that state purchases the product and injures himself as a result, justice demands that the citizen be able to bring suit against the manufacturer in the state in which he was injured and to which the manufacturer sent the dangerous product, regardless of whether the manufacture has any additional meaningful contacts with the forum state. Likewise, where a foreign entity sells products in South Carolina and those products allegedly infringe upon a South Carolina entity's intellectual property rights, the South Carolina entity should be able to bring suit in South Carolina, where the foreign entity sold the allegedly infringing

---

[2] Nobody said Defendant Bischoff was planning a campaign of defamation.

> products and where the South Carolina entity is experiencing harm. Rightfully, the law in this area reflects common sense and permits just that.

Carepoint, Inc., 2020 WL 4207579, at *4. Defendant Bischoff, herself and through her mob, have made many such contacts with South Carolina.

For at least those reasons, Defendant Bischoff has conferred specific personal jurisdiction over her to this Court on the Defamation Count relevant to the present Motion.

B.  This Court Had Specific Personal Jurisdiction over Defendants Prior to the Defamation.

Defendant's Opposition is not a motion to dismiss all counts for lack of personal jurisdiction. Nonetheless, S&K has made a *prima facie* case that this Court had specific personal jurisdiction even before the defamation. See ECF No. 17-1 at 13-15. Furthermore, Defendant Bischoff's argument regarding specific personal jurisdiction ignores recent Fourth Circuit jurisprudence. In UMG Recordings, the Fourth Circuit reversed a dismissal on personal jurisdiction grounds in similar circumstances. See UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344 (4th Cir. 2020), *cert. denied,* 141 S. Ct. 1057, 208 L. Ed. 2d 525 (2021); *on remand* UMG Recordings, Inc. v. Kurbanov, No. 1:18CV957, 2021 WL 1206797 (E.D. Va. Mar. 30, 2021). There, a Russian website operator was found to purposely avail himself of the privilege of conducting business in Virginia, and the copyright infringement claims at issue arose out of his activities directed at Virginia via his website. See UMG Recordings, 963 F.3d at 353-55. On remand, the third prong of specific personal jurisdiction, constitutional reasonableness, was found. See UMG Recordings, 2021 WL 1206797, at *3.

In the present case, Defendant Bischoff sure looks like she has availed herself of the privilege of doing business in South Carolina. See ECF No. 16-6 (Google® search results showing domination of search conducted from South Carolina). More than just a website that can be reached from South Carolina, the search results in South Carolina show purposeful contacts with the state. Search engine optimization does not happen by accident, but by

9

intentional concerted effort.  *See* ECF No. 7 at 6, Para. 25.  The website to which those search results link does not disclose a Minnesota location.  *See* ECF No. 16-4 at 9.  Nor does that website discourage a South Carolina visitor.  *See id.*  That website was not merely passive, but allowed the exchange of information with visitors.  *See* ECF No. 7 at 9, Para. 35.  Those very contacts with South Carolina, like Kurbanov's contacts with Virginia, give rise to the trademark infringement, unfair competition, and unfair trade practices claims of the present suit.

    Finally, it would be constitutionally reasonable to assert jurisdiction over Defendant Bischoff, even more so than Kurbanov.  "To defeat jurisdiction on the grounds of reasonableness, a defendant must present 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" UMG Recordings, 2021 WL 1206797, at *2 (*quoting* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).  Considering the reasonableness of jurisdiction, "[a] court may consider the following factors:

  (1) the burden on the defendant of litigating in the forum;

  (2) the interest of the forum state in adjudicating the dispute;

  (3) the plaintiff's interest in obtaining convenient and effective relief;

  (4) the shared interest of the states in obtaining efficient resolution of disputes; and

  (5) the interests of the states in furthering substantive social policies."

*Id.* (*quoting* Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 279 (4th Cir. 2009)).  Here, Defendant Bischoff has much less burden litigating in South Carolina than Kurbanov faced in Virginia.  As stated above, she has shown adroitness navigating Pacer and filing with this Court.  She is perhaps an afternoon's travel from South Carolina, whereas Kurbanov was more than twenty hours flying from Virginia.  UMG Recordings, 2021 WL 1206797, at *3.  South Carolina has great interest in adjudicating claims relating to the advertisement of legal services within its state.  The interests of the states tip in favor of South Carolina, as South Carolina requires advertisements to include the office address of the attorney advertising legal services,

whereas Minnesota apparently does not.  See ECF No. 16 at 9-10.  Similar to Virginia, South Carolina "maintains 'an interest in ensuring that the nation's copyright and trademark laws are not violated within its borders,' lest the state become a safe haven for intellectual property infringement."  UMG Recordings, 2021 WL 1206797, at *3 (quoting Tire Eng'g & Distrib., 682 F.3d at 305).  Given the lessened burden on Defendant, and the interests of South Carolina in the trademark dispute raised in S&K's original Complaint, jurisdiction over Defendant Bischoff is constitutionally reasonable.

C.  Defendant Bischoff's Defamatory Statements Are Demonstrably False.

Defendant Bischoff has alleged to the world that S&K made "gender-based decisions" to sue only "women-owned firms."  Yet the sole male-owned firm that S&K could have sued did not come to S&K's attention until September 30, 2021, when Defendant filed her Answer.  A Google® search for "Thrive law" (no quotes) on June 16, 2021 did not reveal the male-owned firm to S&K.  See ECF No. 1-6; ECF No. 16-6.  Defendant Bischoff offers no evidence that somehow S&K was in fact aware of the male-owned firm on June 16, 2021, when the present suit was filed.  Nonetheless, Defendant Bischoff threatens to subject S&K to scorched-earth discovery seeking "all information related to gender within Plaintiff's possession."  ECF No. 21 at 7, n. 5. Even if Defendant Bischoff could prove that S&K is colorably sexist, she cannot prove "gender-based decisions" were made targeting only those firms of which S&K was aware.

D.  Defendant Bischoff's Defamatory Statements Are Not Privileged.

Defendant Bischoff's reliance on the "litigation privilege" is misleading.  In Crowell, upon which she relies, the court held that statements in affidavits tendered in an investigation that led to a court-martial were covered by the litigation privilege.  See Crowell v. Herring, 301 S.C. 424, 432, 392 S.E.2d 464, 468 (Ct. App. 1990).  Statements made to a journalist, on Twitter, and on LinkedIn are not judicial proceedings, however.  Defendant Bischoff seeks protection, apparently, under the "fair report privilege" discussed in Garrard.  See Garrard v. Charleston Cty.

11

Sch. Dist., 429 S.C. 170, 192, 838 S.E.2d 698, 710 (Ct. App. 2019), *reh'g denied* (Mar. 18, 2020). "Furthermore, the fair report privilege 'extends only to a report of the contents of the public record and any matter added to the report by the publisher, which is defamatory of the person named in the public records, is not privileged.'" *Id.* (*quoting* <u>Jones v. Garner</u>, 250 S.C. 479, 487, 158 S.E.2d 909, 913 (1968)).

Defendant Bischoff stated in her Answer that "[n]otably, the only other 'thrive'-related law entity Plaintiff has sued was also a female, solo practitioner." ECF No. 7 at 4, Para. 11. "Yet, Plaintiff initiated suit against the only two female-led law firms." *Id.* at 7, Para. 28. It is one thing to say that S&K sued only female-owned law firms. It is another, defamation *per se*, to assert that S&K made "gender-based decisions" when deciding lawyerly questions about whom to sue. The "gender-based decisions" statement goes beyond the statements in the Answer, thereby abusing or exceeding any fair report privilege, and therefore does not enjoy any qualified privilege. Publishing defamatory statements to 35,000 persons on social media also abuses and exceeds any qualified privilege Defendant Bischoff may have had.

In its opening brief, S&K pointed to common law "malice." *See* ECF No. 17-1 at 7. In the present case, Defendant Bischoff trumpets her ill will: "You were told that I would use my platform." ECF No. 17-7 at 2. "[M]ultiple times during those settlement discussions, mention of my willingness to speak openly about Plaintiff's claims was made." ECF No. 21 at 7, n. 3. "Plaintiff is upset I did exactly what I said I would do[.]" ECF No. 21 at 12. Those statements reveal the ill will or common law malice that animates her campaign against S&K.

But "constitutional malice" differs from common law malice. "While common law malice involves a malicious intent or recklessness on the part of the publisher, constitutional malice requires actual knowledge of the publication's falsity or serious reservations about its truthfulness." <u>Holtzscheiter v. Thomson Newspapers, Inc.</u>, 332 S.C. 502, 513, 506 S.E.2d 497, 503 n. 9 (1998). Here, constitutional malice reveals itself in a casual glance at the evidence. The

government record of the formation of the male-owned firm shows a creation date just two weeks before the filing of the present suit. *See* ECF No. 17-5 at 2. It is inconceivable that Defendant Bischoff could have discovered the "male-owned firm" was owned by a male without discerning that it formed almost a year after the first lawsuit was filed and just two weeks before the second. Moreover, a Google® search for "Thrive law" (no quotes) on June 16, 2021 did not reveal the male-owned firm to S&K. *See* ECF No. 1-6. That evidence, all in Defendant Bischoff's possession when she made her defamatory statements on October 3 and 4, 2021, shows she knew the falsity of her statements that S&K made "gender-based decision**s**" to sue "women-owned firms" and not the male-owned firm.

E.  Public Policy Favors an Injunction.

Ms. Bischoff strenuously argues that public policy favors litigating in the public eye, in accordance with the First Amendment. *See* ECF No. 21 at 1. "But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in uninhibited, robust, and wide-open debate on public issues." Gertz v. Robert Welch, Inc., 418 U.S. 323, 340, 94 S. Ct. 2997, 3007, 41 L. Ed. 2d 789 (1974) (citations and quotations omitted). Public policy in the present case favors an injunction. "Society has a pervasive and strong interest in preventing and redressing attacks upon reputation." Rosenblatt v. Baer, 383 U.S. 75, 86, 86 S. Ct. 669, 676, 15 L. Ed. 2d 597 (1966).

F. Declarations Attached.

"[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." Univ. of Texas v. Camenisch, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981). Nonetheless, respecting the Court's evidentiary gatekeeping function, S&K supports salient evidence in declaration form to ensure its consideration by the Court. *See* accompanying Declaration of

13

Peter L. Brewer, Esq., Declaration of Bernard S. Klosowski, Jr., Esq., and Declaration of Jeremy M. Stipkala, Esq.[3]

G.  Rule 11 Sanctions of S&K Should Be Denied.

Defendant Bischoff apparently moves for sanctions under Fed. R. Civ. P. 11.  *See* ECF No. 21 at 11.  That motion should be denied at least because it does not comply with the rule.  Such a motion "must be made separately from any other motion."  Fed. R. Civ. P. 11(c)(1)(2).  And it cannot be made until 21 days after service of a proper motion.  *Id.*  Defendant's letter (not a motion) was emailed on October 8, 2021, and the purported motion was filed 13 days later.

H. Relief Requested.

Defendant Bischoff should be enjoined from defaming S&K further.  *See* ECF No. 17-1 at 19.  The parties need a Preliminary Injunction to foreclose more harm to S&K and more liability for Defendant Bischoff.  "Absent an order from the Court, ***nothing*** prevents a party from exercising her First Amendment Right to discuss the litigation truthfully."  ECF No. 21 at 1 (emphasis in original).  Defendant Bischoff has shown her inability to discern the truth, and her fervent desire to hurt S&K.  She unrelentingly manufactures nefarious motivations where none exist, for example, turning allegations of trademark infringement into an attack on her diversity and inclusion advocacy.  *See* ECF No. 21 at 6.

I.  Let the Streisand Effect Work for Good and Not for Evil.

Defendant Bischoff has intentionally smeared the reputation of S&K in retaliation for S&K asserting its trademark.  S&K acts, with this Motion, to suppress that smear.  But S&K has received a snarky warning about the Streisand Effect, in which suppressed information goes viral.  *See* ECF No. 17-9.  S&K wants one thing to go viral: who we are.  S&K was launched as a solo practice on the notion that everyone surrounding our practice of law deserves to thrive.

---

[3] Dr. Stipkala's Declaration relates to uncontested issues.  *See* Brooks v. S.C. Comm'n on Indigent Def., 419 S.C. 319, 325, 797 S.E.2d 402, 405 (Ct. App. 2017)(*discussing* S.C. App. Ct. R. RULE 407 RPC 3.7.).

Clients, colleagues, vendors.  Patent examiners, judges, and the guy at the courthouse who checks your pockets.  Yes, even opposing counsel and opponents.   The German philosopher Nietzsche warned that when battling monsters, one must be careful not to become a monster.  But we do not battle monsters in our litigations.  We battle *fellow human beings*.  Human beings with hopes and fears, dreams, gifts, special purposes in life, and unique voices that deserve to be heard.  And *rights*.  So we will seek adjudication of those rights on the merits in accordance with the Rule of Law, and we will show respect for those human beings in all circumstances.  And the winner shall be chosen not by who is strongest, nor loudest, nor who has the greater number of followers on Twitter.  The winner shall not be chosen based on gender, nor race, nor sexuality, nor political connection, nor birthright to the best family.  For we are all created equal in the eyes of the law.  We did not pick our brand as some gimmicky tradename.  We chose THRIVE IP® because that is *who we are*.

## CONCLUSION

For the foregoing reasons, and for those stated in its Memorandum (ECF No. 17-1), S&K respectfully moves the Court for the relief sought, and any further relief the Court considers just.

Dated: October 27, 2021                              Respectfully submitted,

s/Jeremy M. Stipkala
Jeremy M. Stipkala (Fed. Id. No. 10479)
THRIVE IP®
5401 Netherby Lane
Suite 1201
North Charleston, SC 29420
Tel:  843.580.9057
Fax:  866.747.2595
Jeremy.Stipkala@Thrive-IP.com

*Attorney for Plaintiff*

15

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of October, 2021, the foregoing **PLAINTIFF STIPKALA & KLOSOWSKI LLC'S REPLY IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**, and the accompanying **DECLARATION OF PETER L. BREWER, ESQ.**, **DECLARATION OF BERNARD S. KLOSOWSKI, JR., ESQ.**, and **DECLARATION OF JEREMY M. STIPKALA, ESQ.** will be mailed to Defendant Bischoff at the following address in accordance with Fed. R. Civ. P. 5(b)(2)(C):

Ms. Katherine Corinne Bischoff, *Pro Se*
5725 Wentworth Avenue
Minneapolis, MN 55419

A courtesy copy is being emailed to: kate@k8bisch.com.  Defendant has expressly declined service by email.

                                            s/Jeremy M. Stipkala
                                            Jeremy M. Stipkala (Fed. Id. No. 10479)
                                            THRIVE IP®
                                            5401 Netherby Lane
                                            Suite 1201
                                            North Charleston, SC 29420
                                            Tel:  843.580.9057
                                            Fax:  866.747.2595
                                            Jeremy.Stipkala@Thrive-IP.com

                                            *Attorney for Plaintiff*